UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN GALVAN,<br><br>                       Petitioner,<br><br>v.<br><br>W. MONTGOMERY, Warden,<br><br>                       Respondent. | Case No.: 22cv0330-GPC (MDD)<br><br>**ORDER GRANTING MOTION FOR STAY AND ABEYANCE**<br><br>**[ECF NO. 3]** |

     Juan Galvan is a state prisoner proceeding pro se with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Currently pending before the Court is Petitioner's Motion for a Stay and Abeyance (ECF No. 3), Respondent's Opposition (ECF No. 10) and Petitioner's Reply (ECF No. 13).

     The Petition, which was filed over two months before expiration of the federal one-year statute of limitations, presents several claims raised on direct appeal by Petitioner's appointed state appellate counsel along with fifteen additional claims drafted by Petitioner pro se which apparently have not been raised in state court.  (ECF No. 1 at 5-10, 49-135.) Petitioner requests this action be stayed and his Petition held in abeyance while he returns to state court to exhaust his new claims, arguing that due to prison lockdowns and lack of access to the prison law library during the Covid pandemic he was unable to identify all the claims he wished to raise in this action before the federal one-year statute of limitations

expired. (ECF No. 3 at 1-2.) Respondent opposes the motion, arguing that although Petitioner can show good cause for his failure to present his new claims in state court prior to filing the instant Petition, a stay is not available because: (1) the new claims are without merit and (2) there is no indication they have been presented to any state court and the federal statute of limitations has now expired. (ECF No. 10 at 2-3.) Petitioner replies that he has established good cause for his failure to exhaust state court remedies prior to filing the Petition and his claims have merit. (ECF No. 13 at 1-15.)

## I.  Procedural Background

On February 3, 2018, Petitioner drove his truck onto a sidewalk while under the influence of methamphetamine and marijuana and struck two pedestrians, S.A. who died at the scene and C.S. who suffered traumatic brain injury. *People v. Galvan*, 2020 WL 5649625, at *1-2 (Sept. 23, 2020), *review denied* (Dec. 09, 2020). Petitioner was charged with gross vehicular manslaughter of S.A. while intoxicated in violation of Penal Code § 191.5(a), leaving the scene in violation of Vehicle Code § 20001(c), personally inflicting great bodily injury on both victims in violation of Penal Code § 1192.7(c)(8), and proximately causing bodily injury or death to more than one victim in violation of Vehicle Code § 23358 (count one); driving under the influence of drugs causing injury to victim C.S. in violation of Vehicle Code § 23251, personally inflicting great bodily injury on S.A. in violation of Vehicle Code § 12022.7(a), personally inflicting great bodily injury on C.S. causing her to become comatose due to brain injury in violation of Vehicle Code § 12022.7(b), and proximately causing bodily injury or death to more than one victim in violation of Vehicle Code § 23358 (count two); and committing hit and run with death or permanent serious injury in violation of Vehicle Code § 20001(b)(2) (count three). (ECF No. 1 at 31.) A jury found him guilty on all counts and found all allegations true, and he admitted he had a prior serious felony conviction. (*Id*. at 32.)

Petitioner was sentenced to twelve years for gross vehicular manslaughter, five years for leaving the scene, one year and four months for driving under the influence of drugs causing injury, one year and eight months for causing victim C.S. to become comatose due

to brain injury, and five years for the prior conviction, for a total of twenty-five years in state prison. (*Id.*)  The sentences on count three and the remaining allegations were stayed, and fines, fees and assessments were imposed. (*Id*. at 32-33.)

Petitioner raised state and federal claims on direct appeal which he also raises here. The federal claims include that: (1) his rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated by (a) the prosecution's failure to timely turn over discovery regarding two key witnesses, (b) the trial court's refusal to instruct the jury on the defenses of accident and probable cause; (c) the separate convictions and punishments for two victims for the single act of driving while intoxicated violated double jeopardy principles, and (d) the cumulative effect of the errors; and (2) his federal constitutional rights to due process, equal protection and to be free from cruel and unusual punishment were violated by the imposition of fines, fees and assessments without a finding he had the ability to pay. (ECF No. 1 at 5-10, 49-118, 119-35.)

Petitioner's conviction was affirmed by the state appellate court on September 23, 2020, the state supreme court denied review on December 9, 2020, and Respondent acknowledges the date for filing a petition for a writ of certiorari in the United States Supreme Court was extended from 90 to 150 days in response to the Covid pandemic. (ECF No. 10 at 1.)  Because Petitioner did not seek certiorari, his conviction became final for purposes of the one-year statute of limitations applicable to federal habeas cases on May 8, 2021, the last day to file a petition for writ of certiorari in the United States Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  The one-year statute of limitations to file a federal petition began to run the next day, May 9, 2021. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).  Petitioner constructively filed the instant Petition on March 6, 2022, the same day he filed his motion for stay and abeyance, over two months before the statute of limitations was set to expire on May 8, 2022.[1]

---

[1]  Petitioner is entitled to the benefit of the "mailbox rule" which provides for constructive filing of court documents as of the date they are submitted to the prison authorities for mailing to the court. *Anthony v. Cambra*, 236 F.3d 568, 574-75 (9th Cir. 2000).

## II. Discussion

"[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims" as "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005), citing *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). The Supreme Court has stated that "[a]s a result of the interplay between [the federal] 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id*. at 275.

Thus, when presented with a mixed petition, "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id*. Such a "stay and abeyance should be available only in limited circumstances" and is appropriate where: (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the unexhausted claims are not "plainly meritless" and (3) there is no indication the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id*. at 277-78. Respondent challenges only the second criteria, contending the new claims lack merit. (ECF No. 10 at 2-3.)

In addition, the Ninth Circuit has recognized an alternative to a *Rhines* stay, a *Kelly* stay. *See King v. Ryan*, 564 F.3d 1133, 1135 (9th Cir. 2009), citing *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), overruled on other grounds by *Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). Under the *Kelly* process, Petitioner would delete any unexhausted claims from his Petition, the court would stay this action and hold in abeyance the newly-amended, fully exhausted petition and allow Petitioner the opportunity to proceed to state court to exhaust those claims, and Petitioner would later amend his petition to include the newly exhausted claims. *King*, 564 F.3d at 1135. Although unlike a *Rhines* stay the *Kelly* procedure does not have a "good cause" requirement for the failure to exhaust state remedies before coming into state court, it requires the newly exhausted claims, if brought back outside the statute of limitations, to relate back to timely, exhausted claims in the

original petition. *Id*. at 1141. A claim will relate back if it shares a common core of operative facts with a timely, exhausted claim. *Id*. at 1142. Respondent argues that a *Kelly* stay should be denied on the basis the new claims are without merit. (ECF No. 10 at 3.)

### A. Petitioner has shown good cause

"The caselaw concerning what constitutes 'good cause' under *Rhines* has not been developed in great detail." *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017), citing *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust.") However, *Rhines* does not require a showing of "exceptional circumstances" to show good cause. *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). Rather, as relevant here, the Ninth Circuit has "concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause 'was not a bare allegation of state postconviction (ineffective assistance of counsel), but a concrete and reasonable excuse, supported by evidence.'" *Dixon*, 847 F.3d at 721, quoting *Blake*, 745 F.3d at 983. The *Rhines* standard for good cause based on ineffective assistance of counsel is not any more demanding than the cause standard articulated in *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). *Blake*, 745 F.3d at 984, citing *Martinez*, 566 U.S. at 14 (holding that cause for a default of an ineffective-assistance claim can be established where the state court did not appoint counsel in the initial-review collateral proceeding or where such appointed counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).)

The Petition here includes fifteen new claims drafted by Petitioner pro se, fourteen of which include specific and detailed allegations of ineffective assistance of trial counsel and eight include allegations of ineffective assistance of appellate counsel. (ECF No. 1 at 136-72.) In addition, Petitioner argues that lockdowns associated with the Covid pandemic delayed discovery of his new claims. (ECF No. 3 at 1-2.) Respondent acknowledges that Petitioner can "easily" establish good cause for a *Rhines* stay. (ECF No. 10 at 2.) The Court finds Petitioner has adequately shown good cause for a *Rhines* stay, and, as set forth above, a showing of good cause is unnecessary for a *Kelly* stay.

**B. Petitioner has not engaged in abusive litigation tactics or intentional delay**

A *Rhines* stay is not available where a petitioner has engaged in "abusive litigation tactics or intentional delay." *Rhines*, 544 U.S. at 278. As noted above, Petitioner filed his original federal Petition and the instant stay motion with nearly two months left on the one-year statute of limitations. Although the record does not establish whether Petitioner has presented his new claims to the state court and it appears he is waiting to be granted a stay to do so, he has been diligent and timely in all his federal filings, including his stay motion. *See Grant v. Swarthout*, 862 F.3d 914, 920 (9th Cir. 2017) (noting that state habeas petitioners are entitled to utilize their entire one-year period to exhaust state court remedies, as "one might even conclude that the period is too short to allow many prisoners, especially the vast majority who are acting pro se, to investigate, research, and fully prepare such complex and lengthy legal documents.")

Respondent is incorrect that even if Petitioner has not yet presented his new claims to the state court his failure to do so before expiration of the federal one-year statute of limitations requires denial of a stay. Because Petitioner's stay motion was filed prior to expiration of the statute of limitations, if he is given a *Rhines* stay retroactive to the date he filed his motion, his new claims would be timely in this Court despite the fact that the one-year statute of limitations expired before he first presented them to the state supreme court. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (holding that a state prisoner may timely file "a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."), citing *Rhines*, 544 U.S at 278 (noting that granting a stay and abeyance "effectively excuses a petitioner's failure to present his claims first to the state courts."); *King*, 564 F.3d at 1140 ("When implemented, the *Rhines* exception eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in the federal court throughout.") Nevertheless, any procedural bars the state court may apply to the new claims could result in a procedural default in this Court even if the new claims are timely under the federal one-year statute of limitations. *Dixon*, 847 F.3d at 722.

Under the *Kelly* procedure the new claims are removed from the timely federal Petition and, absent tolling of the one-year statute of limitations, will likely be untimely here with a *Kelly* stay. However, that does not preclude a stay because Petitioner may argue for equitable tolling of the statute of limitations either as a result of the delay in ruling on his timely stay motion, or because his delay in presenting claims to the state court until after expiration of the statute of limitations was caused by lack of access to the trial record, counsel files, or ineffective assistance of appellate counsel, for example. *See e.g. Lett v. Mueller*, 304 F.3d 918, 922-25 (9th Cir. 2002) (lack of access to legal materials can support equitable tolling); *Spitsyn v. Moore*, 345 F.3d 796, 801-02 (9th Cir. 2003) (ineffective assistance of appellate counsel can support equitable tolling); *Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002) (delay by district court can support equitable tolling). The Court finds there is no showing Petitioner has engaged in abusive litigation tactics or intentional delay requiring denial of his stay motion.

### C. At least one of Petitioner's new claims is not plainly meritless

Finally, a stay is unavailable if Petitioner's new claims are "plainly meritless." *See Rhines*, 544 U.S. at 277-78 ("[I]t would likely be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.") A claim is "plainly meritless" where "it is perfectly clear that the petitioner has no hope of prevailing." *Dixon*, 847 F.3d at 722 ("A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted."), quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

Respondent contends in an entirely conclusory manner that Petitioner's claims of ineffective assistance of counsel are plainly meritless because he "has provided nothing to establish deficient performance and prejudice" to support his claims. (ECF No. 10 at 3.) Petitioner replies that all of his new claims involve ineffective assistance of counsel and they all have merit. (ECF No. 14 at 1-15.) Based on an examination of a sample of several

of Petitioner's new claims, the Court is unable to find they are plainly meritless on the record before the Court, as it is not perfectly clear Petitioner has no hope of prevailing on any of his new claims.

As an example, in his first new claim Petitioner alleges he told defense counsel before trial he remembered driving down Parkside Road and deciding to turn left on Beatrice Street but changing his mind at the last moment when he heard what he thought was a gunshot. (ECF No. 1 at 136, 168.) When he tried to continue down Parkside Road, he drove up on the sidewalk, his tire popped when it hit the curb, he lost control of his truck which prevented him from braking, and struck a wall which caused him to hit his head and see spots and white flashes and blackout. (*Id*.) He remembered scraping the wall but then nothing for the next one or two seconds, during which an eyewitness testified the vehicle hit the victims, until he regained consciousness upside down in his truck. (*Id*. at 136.) He claims his attorney told him it was better to avoid complications and say he did not remember anything after hitting the wall. (*Id*.) He claims counsel should have allowed him to testify truthfully and then requested the jury be instructed that he could not be found guilty if he ran over the victims while unconscious. (*Id*. at 137-38.)

For ineffective assistance of counsel to provide a basis for federal habeas relief, Petitioner must show counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. He must also show counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. To establish prejudice, Petitioner need only demonstrate "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Claim one contains an allegation that defense counsel instructed Petitioner not to tell the truth in his testimony before the jury which resulted in the loss of a defense. It is unclear without a review of the trial record, which has yet to be lodged by Respondent, whether the claim is plainly meritless, that is, whether "it is perfectly clear that the petitioner has no

hope of prevailing." *Dixon*, 847 F.3d at 722, quoting *Cassett*, 406 F.3d at 624. Respondent has not argued with any detail why this claim is without merit, merely stating in an entirely conclusory manner that: "Galvan has provided nothing to establish deficient performance and prejudice." (ECF No. 10 at 2.) Such a cursory response to Petitioner's motion amounts nearly to a non-opposition.

Petitioner alleges in claim two he received ineffective assistance of trial and appellate counsel by their failure to argue that the imposition of a California Vehicle Code § 23358 enhancement for proximately causing death or injury to more than one person, on top of a California Penal Code § 12022.7(b) great bodily injury enhancement, violated California Penal Code § 654, which provides that although a defendant can be charged and convicted of separate crimes for the same act, only one punishment can be imposed, the longer of the two available sentences. (ECF No. 1 at 139.) He argues that but for counsels' failure he would not be doing time for the § 12022.7(b) finding. (*Id*.) Similarly, Petitioner alleges in claim three he received ineffective assistance of counsel based on counsel's failure to argue that double jeopardy principles and his right to a jury trial and due process were violated because his conviction on California Vehicle Code § 20001(c) for leaving the scene on count one should have precluded conviction under California Vehicle Code § 23153(f) for driving under the influence of drugs and causing injury on count two, as well as under California Penal Code § 191.5(a) for gross vehicular manslaughter while intoxicated on count one. (*Id*. at 140-44.) He argues that each of those offenses were committed in a single act and cannot be punished separately, that all those offenses share elements, and that § 23153(f) is a lesser included offense of § 20001(c). (*Id*.) Petitioner alleges in claim five he received ineffective assistance of counsel and was denied due process and his right to a jury trial when counsel failed to contend at trial and on appeal there was insufficient evidence of intent to support the California Vehicle Code § 20001(c) charge of leaving the scene. (*Id*. at 148-53.) He claims that although a witness testified Petitioner walked away from the scene, Petitioner testified that he walked away for reasons other than to avoid being arrested, and he returned. (*Id*.) He argues there was no evidence

he intended to flee the scene to avoid being charged with driving under the influence as required to support a § 20001(c) finding. (*Id.*)

The Court is unable to find, at least upon the record before it, that it is perfectly clear Petitioner has no hope of prevailing on any of his ineffective assistance of counsel claims.

### III. Conclusion

Petitioner's Motion for Stay and Abeyance [ECF No. 3] is **GRANTED**. This matter is **STAYED** pursuant to *Rhines* pending exhaustion of state court judicial remedies. If Petitioner has not already begun the exhaustion process, he must do so within forty-five (45) days of the date this Order is filed. After Petitioner has exhausted state court remedies he must notify the Court within forty-five (45) days of the date state court exhaustion is complete.

If Petitioner prefers to have a *Kelly* stay he must promptly inform the Court and withdraw the unexhausted claims from the Petition. The then fully-exhausted Petition with be held in abeyance while Petitioner proceeds to state court to exhaust those claims, and Petitioner will be required to amend his Petition to include the newly exhausted claims within forty-five (45) days of the date state court exhaustion is complete.

Petitioner must file with this Court a notification within forty-five (45) days of the date of this Order that he has presented his claims to the state court and thereafter file a status report every ninety (90) days reporting on the progress of his exhaustion efforts. Petitioner must also notify the Court within forty-five (45) days after exhaustion is complete at which time the stay will be lifted. If Petitioner fails to follow these deadlines or seek relief from them upon a showing of good cause, the stay will be lifted and this matter will proceed as if no stay had been granted.

**IT IS SO ORDERED.**

Dated: October 7, 2022

Hon. Gonzalo P. Curiel
United States District Judge

10

22cv0330-GPC (MDD)